UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ResCap Liquidating Trust, | Civ. No. 16-4067 (PAM/HB) |
| Plaintiff, | |
| v. | |
| U.S. Bank, N.A., | |
| Defendant. | |

| | |
|---|---|
| ResCap Liquidating Trust, | Civ. No. 17-197 (PAM/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| BMO Harris Bank, N.A., | |
| Defendant. | |

| | |
|---|---|
| ResCap Liquidating Trust, | Civ. No. 17-198 (PAM/HB) |
| Plaintiff, | |
| v. | |
| WMC Mortgage, LLC, | |
| Defendant. | |

This matter is before the Court on Motions to Dismiss filed in these so-called "second wave" of the consolidated In re RFC and ResCap Liquidating Trust Litigation, D. Minn. No. 13cv3451, cases. For the following reasons, the "omnibus" Motion is denied, BMO Harris Bank's case-specific Motion is denied, and U.S. Bank's case-specific Motion is granted and the Complaint against U.S. Bank is dismissed without prejudice.

**BACKGROUND**

The full factual background of this matter has been detailed in many previous Orders and will not be repeated here. Briefly, Plaintiff ResCap Liquidating Trust, successor to Residential Funding Company (collectively referred to as "RFC"), alleges that the mortgages the various bank Defendants sold to RFC, and which RFC aggregated into mortgage-backed securities, were defective and did not comply with the underwriting and originating standards in the parties' agreements. RFC claims breach of contract and indemnification against the banks.

**DISCUSSION**

**A.    Omnibus Motion[1]**

The banks' omnibus Motion contends that the Court lacks jurisdiction over these cases. Jurisdiction in all RFC actions now pending in federal court is premised on the Bankruptcy Code. Defendants argue that these cases must be dismissed because they are insufficiently related to RFC's bankruptcy to confer subject-matter jurisdiction.

Jurisdiction over BMO is also premised on diversity jurisdiction. BMO argues that RFC has failed to allege its citizenship, and that RFC's citizenship must include all of the Trust's "unitholders", which number in the thousands if not tens of thousands. According to BMO, it is likely impossible for every Trust unitholder to be diverse from BMO, so diversity jurisdiction is lacking. If there is no bankruptcy jurisdiction, BMO contends, there is no basis for federal jurisdiction. The Court will first address bankruptcy

---

[1] The omnibus Motion was filed concurrently in four then-pending second-wave cases. One of those cases, 17cv194, has since been resolved, but the subject of the Motion remains in dispute.

jurisdiction, setting aside the question whether there is diversity jurisdiction over BMO.

1.  **Bankruptcy Jurisdiction**

This Court has jurisdiction over matters "arising in or related to cases under" the Bankruptcy Code. 28 U.S.C. § 1334(b). There is no dispute that this matter did not "aris[e] in" RFC's bankruptcy proceedings. Thus, the only basis for federal jurisdiction over many of the RFC cases pending in this District is "related to" bankruptcy jurisdiction. To determine whether these cases are "related to" RFC's bankruptcy case requires a brief review of RFC's bankruptcy and the creation of the Trust.

The Bankruptcy Court for the Southern District of New York confirmed RFC's Chapter 11 plan in December 2013. In re Res. Capital, LLC, Case No. 12-12020 (Bankr. S.D.N.Y. Dec. 11, 2013). As part of that confirmation, the court created Plaintiff ResCap Liquidating Trust. RFC transferred all of its assets to the Trust, including the claims that the Trust asserts in these lawsuits. Indeed, one of the main purposes for the Trust's creation was the pursuit of the claims in these lawsuits. The Trust assigned "units" of the Trust in proportional shares to RFC's various creditors, whom the parties now call "unit-holders." The Trust's units are negotiable and have been bought and sold on the market.

In most civil litigation that claims "related to" bankruptcy jurisdiction under § 1334(b), courts evaluate federal jurisdiction by determining whether the litigation has a "conceivable effect" on the bankruptcy estate. In re RFC & ResCap Liquidating Trust Litig., No. 13-3451, 2015 WL 2373401, at * 5 (D. Minn. May 18, 2015) (Nelson, J.). The

"conceivable effect" test is undeniably broad, and Defendants do not dispute that, under that test, these cases are "related to" RFC's bankruptcy for purposes of conferring federal jurisdiction.

      a.      <u>Eighth Circuit test</u>

Defendants argue that, because these lawsuits arose after confirmation of RFC's bankruptcy plan, the Court must use a narrower test to evaluate whether they are "related to" the bankruptcy. According to Defendants, the Court must determine whether the matter is related to the administration and interpretation of the bankruptcy plan, not merely whether it has a conceivable effect on the plan. (Defs.' Supp. Mem. (Docket No. 50 in 17cv194) at 12 (quoting <u>In re Fairfield Cmties., Inc.</u>, 142 F.3d 1093, 1095 (8th Cir. 1998)).) The reason for this distinction, Defendants argue, is that this litigation arises long after the confirmation of RFC's bankruptcy plan, while cases using the "conceivable effect" test involved litigation that arose before the plan's confirmation.

Defendants draw their narrow test from the Eighth Circuit's <u>Fairfield Communities</u> decision. That case involved claims against a bankrupt debtor that arose from the debtor's post-confirmation conduct. <u>Id.</u> at 1095. The Eighth Circuit stated the general principle that a bankruptcy court could retain post-confirmation jurisdiction "over aspects of a plan related to its administration and interpretation" by explicitly providing for such continuing jurisdiction in the confirmation order. <u>Id.</u> (quoting <u>Norwest Equip. Fin., Inc. v. Nath</u>, 91 F.3d 1072, 1074 (8th Cir. 1996)). In the <u>Fairfield Communities</u> case, the bankruptcy court retained jurisdiction "over cases involving the enforcement of the plan." <u>Id.</u> As the

4

Eighth Circuit put it, the resolution of that question required determining when the claims arose: "this case could involve [enforcement of] the plan only if the [creditors'] claims arose before the plan's confirmation." Id. at 1095. Because the creditors' claims solely involved the debtor's post-confirmation conduct, the Eighth Circuit held that those claims did not involve enforcement of the plan and that there was therefore no bankruptcy jurisdiction over them. Id. at 1096.

Fairfield Communities presented a far different situation than is presented in the RFC cases. The Bankruptcy Court in RFC's bankruptcy proceedings retained "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan . . . including jurisdiction . . . to hear and determine any Causes of Action preserved under the Plan." (Markowitz Decl. Ex. 1 (Docket No. 51-1 in 17cv194) Art. XII (pp. 110-12).) RFC's bankruptcy plan specifically contemplates post-confirmation litigation and preserved jurisdiction over that litigation. See In re RFC & ResCap, 2015 WL 2373401, at *5 ("The Plan expressly preserved RFC's claims [against the banks] and transferred them to ResCap to pursue.") (citations omitted). Moreover, "[t]he very purpose of these actions is to prosecute those [preserved] claims." Id.

And all of the RFC litigation relates to conduct—each bank's sale of allegedly defective loans to RFC—that occurred long before the plan's confirmation, and indeed long before RFC declared bankruptcy. RFC claims that the sale of these allegedly defective loans is one cause, if not the sole cause, of RFC's bankruptcy in the first instance. It is difficult to imagine litigation that more fundamentally relates to RFC's bankruptcy

5

than these cases.

Defendants acknowledge that all six federal courts to have considered this issue in the context of these RFC cases have held that those courts can properly exercise "related to" bankruptcy jurisdiction over the cases. They maintain that either the decisions were wrongly decided or that the courts used a test from the Second Circuit that is ostensibly broader than the test the Eighth Circuit set forth in Fairfield Communities.

   b.  Second Circuit test

There is some dispute regarding the test for post-confirmation "related to" jurisdiction in the Second Circuit. See Allstate Ins. Co. v. CitiMortg., Inc., No. 11cv1927, 2012 WL 967582, at *5 (S.D.N.Y. Mar. 13, 2012) (summarizing caselaw on the issue). But the most stringent test courts in the Second Circuit use for post-confirmation "related to" jurisdiction is whether the matter has a "close nexus to the bankruptcy plan or proceeding." In re Gen. Media, Inc., 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005). A close nexus requires proof that the lawsuit "affects an 'integral aspect' of the bankruptcy proceedings, such as 'the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement.'" ResCap Liquidating Trust v. Primary Capital Advisors, LLC, 527 B.R. 865, 870-71 (S.D.N.Y. 2014) (quoting In re Metro-Goldwyn-Mayer Studios Inc., 459 B.R. 550, 556 (Bankr. S.D.N.Y. 2011)). The "close nexus" test also requires that the bankruptcy plan expressly provide for retention of jurisdiction of the dispute. Id. at 871.

Each court to have faced the issue has found that RFC satisfies even the stringent

6

"close nexus" test for the post-confirmation litigation against the banks. As one decision stated, the claims RFC raises in these cases "directly affect the interpretation, implementation, consummation, execution, or administration of the bankruptcy plan." Primary Capital, 527 B.R. at 871. This is so because the plan expressly preserved these claims and transferred the claims to the Trust to prosecute. Id.; see also Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc., 519 B.R. 593, 600 (S.D.N.Y. 2014) (finding "close nexus" over RFC's claims because "confirmed plan of liquidation expressly preserves RFC's claims and transfers them to the liquidating trust to prosecute"); Residential Funding Co., LLC v. Suntrust Mortg., Inc., No. 12cv12020, 2015 WL 739829, at *4 (S.D.N.Y. Feb. 20, 2015) (same); ResCap Liquidating Trust v. Summit Fin. Mortg., LLC, No. 14cv5453, 2016 WL 1203756, at *4 (S.D.N.Y. Mar. 22, 2016) (same); ResCap Liquidating Trust v. Mortg. Inv. Grp., Inc., No. 15cv1902, 2015 WL 5311250, at *2 n.4 (S.D.N.Y Sept. 11, 2015) (finding federal question jurisdiction because the case was "related to" the bankruptcy).

Even assuming that the Fairfield Communities "administration and interpretation" requirement applies to these cases, Defendants have not established that the Eighth Circuit's test is in fact substantially narrower than the "close nexus" requirement from the Second Circuit. But more importantly, no matter which test applies, these cases are sufficiently connected to RFC's bankruptcy proceedings for the exercise of federal jurisdiction. They are undoubtedly "related to" RFC's bankruptcy. Because RFC's bankruptcy plan set up a trust specifically to pursue these cases, they are also related to the

administration of that bankruptcy plan. And these claims "directly affect the interpretation, implementation, consummation, execution, or administration of the bankruptcy plan." Primary Capital, 527 B.R. at 871. The exercise of federal jurisdiction over these actions is therefore proper.

   c. Abstention

Defendants also argue that, even if the Court determines that it has "related to" jurisdiction, it should abstain from these cases. Defendants contend that abstention is appropriate "in the interest of comity with State courts or respect for State law," 28 U.S.C. § 1334(c)(1), because RFC's claims are state-law claims and they are not closely related to the bankruptcy estate. Although the claims arise under state law, they certainly are more than tangentially related to RFC's bankruptcy estate—as discussed above, these cases are all fundamentally tied to RFC's bankruptcy. And Defendants do not acknowledge the substantial resources the Court has already expended in these related cases. Transferring the litigation to state court would be a waste of judicial resources and extremely inefficient.

  **2.** **Diversity Jurisdiction**

Because the Court has determined that there is federal question jurisdiction over these cases, there is no need to reach the issue of diversity jurisdiction.

**B.** **BMO's Motion**

BMO separately moves to dismiss RFC's claims against it, arguing that RFC should be precluded from raising claims against BMO in this lawsuit because RFC has already filed suit against BMO in a different lawsuit. According to BMO, RFC's actions

constitute impermissible claim-splitting.

The judge-made prohibition on claim-splitting is akin to res judicata, although res judicata depends on a final judgment in one action, whereas an evaluation of claim-splitting is made during the pendency of both related cases. Courts use the principles of res judicata to evaluate a claim-splitting defense, so that a party may not raise in a second suit a claim that is "part of the transaction, or series of connected transactions, out of which [a prior proceeding] arose." Restatement (Second) of Judgments § 24(1). Like res judicata, claim-splitting bars a plaintiff from bringing in a second action claims that "were raised or could have been raised in the prior suit" or claims that arise out of the "same nucleus of operative facts as the prior claim." Lane v. Peterson, 899 F.2d 737, 741, 742 (8th Cir. 1990).

As noted, RFC has filed two lawsuits against BMO in the related RFC cases. Residential Funding Co., LLC v. BMO Harris Bank, N.A., No. 13cv3523 (PAM/HB) ("BMO I"); ResCap Liquidating Trust v. BMO Harris Bank, N.A., No. 17cv197 (PAM/HB) ("BMO II"). BMO I, filed shortly after confirmation of RFC's bankruptcy plan in 2013, claims that loans sold to RFC by M&I Bank were defective. BMO acquired M&I Bank in 2011, and RFC's Amended Complaint in BMO I names BMO "d/b/a M&I Bank" as the lone Defendant, noting that BMO assumed "all of M&I Bank's liabilities and obligations to RFC." (Am. Compl. (Docket No. 49) ¶ 14.) The pleading purports to encompass all of the allegedly defective loans M&I Bank sold to RFC. (See id. ¶ 17 (stating that "Defendant sold over 6,830 mortgage loans to RFC"); id. Ex. C (listing loans

9

at issue).)

BMO II challenges loans sold to RFC by AmerUs Home Lending, another bank for whom BMO is the successor. The Complaint names as Defendant "BMO Harris Bank, N.A. as successor to Amerus Home Lending, Inc." (Docket No. 1.) Although BMO is a successor to AmerUs, AmerUs was first acquired by M&I in 2003. Thus, when BMO acquired M&I in 2011, BMO also acquired AmerUs. Although most of the loans at issue were originated before M&I acquired AmerUs, more than 100 of the loans were originated in 2004 and after, when AmerUs was part of M&I Bank. (Id. Ex. D.)

BMO contends that BMO I should have included the AmerUs loans, because M&I acquired AmerUs in 2003, eight years before BMO acquired M&I and ten years before any of these lawsuits was filed. BMO points out that RFC has known of the AmerUs loans since August of 2015 at the latest, and thus could have sought to amend BMO I to include those loans. There seems to be no dispute that the list of at-issue loans in BMO I does not include the AmerUs loans, however.

The usual case of claim-splitting involves the same plaintiff asserting different causes of action in different cases. Thus, for example, a plaintiff who brought a state-court breach-of-contract action arising out of the termination of her employment could not assert in a separate lawsuit claims that her termination constituted gender discrimination under Title VII and the MHRA. MacIntyre v. Lender Processing Servs., Inc., No. 12cv1514, 2012 WL 4872678 (D. Minn. Oct. 15, 2012) (Magnuson, J.). But different claims are not necessary for a court to apply claim-splitting. Rather, the Court

10

must examine whether two causes of action are the same for res judicata purposes. Lane, 899 F.2d at 742 (adopting Restatement (Second) of Judgments § 24). To make this determination, the Court examines: "(1) whether [the] separate actions brought arise out of the same act, contract or transaction; (2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions." Citimortgage, Inc. v. Chicago Bancorp, Inc., No. 4:14cv1278, 2015 WL 631365, at *5 (E.D. Mo. Feb. 12, 2015) (quoting Deatherage v. Cleghorn, 115 S.W.3d 447, 455 (Mo. Ct. App. 2003)).

RFC argues that claim-splitting does not apply because the two suits involve different sets of loans and thus different operative facts. While the Court takes a dim view of RFC's decision to bring two separate lawsuits against BMO, especially when RFC knew about the AmerUs loans before the time for amending pleadings in BMO I had passed, this situation does not fit within the narrow confines of claim-splitting. The AmerUs loans were originated separately, subject to different contracts and underwriting standards, than were the M&I loans. Thus, the factual basis for the two lawsuits is different. See Lehman Bros. Holdings Inc. v. Gateway Funding Diversified Mortg. Servs., L.P., 942 F. Supp. 2d 516, 532 (E.D. Pa. 2013) (holding that the two lawsuits against the lender "involved entirely different loans" and thus that res judicata did not bar the second suit). And it is clear that, if BMO I had been litigated to final judgment, RFC would not be precluded from bringing the claims in BMO II. See Hartsel Springs Ranch of Colo., Inc., v. Bluegreen Corp., 296 F.3d 982, 987 n.1 (10th Cir. 2002) ("[I]n the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final,

the second suit could be precluded pursuant to claim preclusion.") BMO does not contend that the list of at-issue loans attached to the pleadings in BMO I included any AmerUs loans, for example, or that any of the loans at issue in BMO II are the same as those at issue in BMO I. "[E]ach loan in these cases presents a distinct factual basis giving rise to relief." Citimortgage, 2015 WL 631354, at *5. The two sets of loans at issue in BMO I and BMO II are factually distinct and give rise to distinct relief. Thus, claim-splitting does not apply, and BMO's Motion is denied.[2]

## C. U.S. Bank's Motion

RFC's Complaint against U.S. Bank alleges that U.S. Bank is the successor to "several other sellers of loans to RFC." (Compl. ¶ 17.) These "other sellers" include Pacific National Bank and PNB Mortgage, divisions of Southern California Bank, which merged with U.S. Bank at an unspecified date.[3] (Id.) Also listed as other sellers are Firstar Corporation, which merged with U.S. Bancorp in 2001 to create U.S. Bank, and subsidiaries of Firstar, including Firstar Home Mortgage Corp. a/k/a Firstar Bank N.A., Star Banc Corp., Firstar Bank Milwaukee, and Roosevelt Bank. (Id.) The Complaint alleges that "[e]ach of these entities also sold loans to RFC that are at issue in this lawsuit." (Id.) In contrast to other cases in which a successor bank's predecessors are named in the caption, see, e.g., BMO II, 17cv197 (caption lists Defendant as "BMO Harris Bank, N.A., as successor to Amerus Home Lending, Inc."), RFC did not include any predecessor bank

---

[2] The Court encourages Magistrate Judge Bowbeer to narrowly tailor discovery to avoid any delay in the resolution of the RFC cases, and to consider awarding BMO a portion of the duplicative costs it incurs conducting discovery in this matter.

in the caption here. The only named Defendant is U.S. Bank alone, and the Complaint defines "Defendant" as "U.S. Bank N.A." (Compl. at 1.)

U.S. Bank contends that RFC's claims are insufficiently pled because they do not set forth which of the allegedly defective loans each "other seller" sold to RFC, or even that any specific loan any of the other sellers sold to RFC was defective. U.S. Bank points out that, although Exhibit D to the Complaint purports to encompass all loans U.S. Bank and the other sellers sold to RFC,[4] Exhibit A, which sets forth a statistical sample of defective loans (Compl. ¶ 50), only includes loans that U.S. Bank itself sold to RFC. Thus, U.S. Bank argues, RFC has failed to sufficiently allege that any of the other sellers sold RFC loans that were defective.

In response, RFC admits that one entity, Star Banc Corp., should not have been included in the Complaint, and another entity, Firstar Finance, Inc., was "inadvertently omitted." (Pl.'s Opp'n Mem. (Docket No. 42) at 3.)[5] RFC has not sought to amend the Complaint, but rather asks the Court to rewrite the allegations to correct this "scrivener's error." But a party cannot amend its pleadings with a memorandum of law. RFC must

---

[3] An internet search revealed that U.S. Bank's acquisition of Western Bancorp, the parent company of Southern California Bank, occurred in November 1999. Dow Jones, <u>U.S. Bancorp Completes Western Bancorp Buy</u>, Los Angeles Times, Nov. 17, 1999.

[4] Exhibit D lists the at-issue loans in chronological order. Fewer than 50 of the 8,400 loans at issue were funded before U.S. Bancorp acquired Southern California Bank's parent company. (Docket No. 1-33.)

[5] In addition, as U.S. Bank notes, RFC may not be seeking relief for loans sold by Firstar Bank Milwaukee. (Def.'s Reply Mem. (Docket No. 52) at 6 n.3.) RFC did not explain why this entity was included in the Complaint against U.S. Bank if there is no evidence that it sold defective loans to RFC.

13

separately seek to amend its pleading to correct any "scrivener's errors."

RFC's substantive response to this Motion is likewise insufficient. RFC contends that the allegations here are similar to those found to state a claim in other RFC cases. But that does not explain why RFC utterly failed to allege any deficiencies in the loans the other sellers sold to RFC. The Complaint alleges only that the other sellers sold loans to RFC and that U.S. Bank merged with the other sellers. (Compl. ¶ 17.) It does not allege that any of these other sellers breached any of the representations or warranties that RFC accuses U.S. Bank of breaching. Even construing the allegations in the light most favorable to RFC, RFC has failed to allege that any of the other sellers did anything wrong.

RFC likewise does not explain why its list of a sample of allegedly defective loans does not include a single loan that any of the other sellers originated. Although there are thousands of loans at issue, including loans from at least one of U.S. Bank's predecessors might have sufficed to overcome the deficiencies in the Complaint's allegations with regard to the other sellers.

It is RFC's burden to plead its claims with sufficient specificity to put U.S Bank on notice of what loans are at issue and what it or its predecessors did wrong with respect to those loans. As multiple courts have previously held, RFC may do this with statistical samples and forensic reviews of the samples. But the statistical sample on which RFC relies in this case fails to provide any support for the arguments in RFC's opposition memorandum that loans sold by the other sellers were also defective. RFC must, at a minimum, plausibly allege that these other sellers breached their duties to RFC. RFC's

failure to include the other sellers' loans in its statistical sample, combined with the lack of any specific allegation that any of these sellers actually sold RFC a defective loan, mean that RFC has not stated a claim as to loans these other sellers sold to RFC.

To the extent that RFC's Complaint against U.S. Bank attempts to state a claim regarding loans sold to RFC by U.S. Bank's predecessors before those predecessors merged with U.S. Bank, it has failed to do so. The Court will, however, dismiss the Complaint without prejudice. Should RFC wish to include allegations against these other sellers, or to correct the "scrivener's errors" in the identification of the other sellers, it must file its amended pleading within 30 days of the date of this Order.

**CONCLUSION**

The Court has subject-matter jurisdiction over the second wave of RFC cases, and abstention is not appropriate. RFC's claims in BMO II do not constitute impermissible claim-splitting, but RFC has failed to sufficiently state a claim against U.S. Bank regarding loans U.S. Bank's predecessors sold to RFC.

Accordingly, **IT IS HEREBY ORDERED that**:

1. The Omnibus Motion to Dismiss (Docket No. 28 in 17cv194; Docket No. 12 in 17cv198) is **DENIED**;

2. BMO's Motion to Dismiss (Docket No. 28 in 17cv197) is **DENIED**;

3. U.S. Bank's Motion to Dismiss (Docket No. 18 in 16cv4067) is **GRANTED in part** and the Complaint is **DISMISSED without prejudice** as to loans U.S. Bank's predecessors sold to RFC; and

4. RFC may file an Amended Complaint against U.S. Bank within 30 days of this Order to correct the deficiencies discussed above.

Dated: June 5, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge